**2007 BNH 029**   Note:   This is an unreported opinion.  Refer to LBR 1050-1 regarding citation.

---

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW HAMPSHIRE

In re:                                                                                       Bk. No. 05-13392-JMD
                                                                                              Chapter 7
Michael J. Mooney,
           Debtor


Paul S. LaCarubba,
           Plaintiff

v.                                                                                            Adv. No. 05-1205-JMD

Michael J. Mooney,
           Defendant


*Ian N. McCallister, Esq.*
*Pollack & Flanders, LLP*
*Boston, Massachusetts*
*Attorney for Plaintiff*

*Stephen J. Rodman, Esq.*
*Lampert, Hausler & Rodman, P.C.*
*Chelmsford, Massachusetts*
*Attorney for Defendant/Debtor*


## MEMORANDUM OPINION

### I. INTRODUCTION

Michael Mooney (the "Defendant") filed a voluntary petition under chapter 7 of the Bankruptcy Code[1] on August 30, 2005.  Paul LaCarubba (the "Plaintiff") timely filed a complaint (1) requesting that the Defendant's obligations to the Plaintiff be excepted from

---

[1] Unless otherwise indicated, the terms "Bankruptcy Code," "section" and "§" refer to Title 11 of the United States Code, 11 U.S.C. § 101 et seq., prior to amendment by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8.

discharge under 11 U.S.C. §§ 523(a)(4) and (a)(6); and (2) objecting to the Defendant's discharge pursuant to 11 U.S.C. § 727.  The Court held a one day trial on September 28, 2006 at which the Court heard the testimony of three witnesses and admitted forty-seven exhibits.  The Plaintiff submitted his requests for findings and rulings on October 5, 2006 and the matter was taken under advisement.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.).  This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II.  FACTS

The Defendant is obligated to the Plaintiff pursuant to a final judgment of the Essex County Superior Court, Commonwealth of Massachusetts dated June 22, 2005 in the amount of $125,000.00 plus weekly payments of consulting fees, interest, attorney's fees and costs (Exhibit 4) (the "Judgment").  The Judgment, which is unsecured, arose from a default under the terms of the sale of a business by the Plaintiff to F&M, LLC ("F&M")[2], a company owned and operated by the Defendant and a business partner.

The Plaintiff had been in the business of installing and servicing heating, ventilation and air conditioning ("HVAC") systems.  When he sold his business to F&M in 1999 he was granted a security interest in all of F&M's assets to secure its obligation.  In addition, the Defendant and

---

[2] It is undisputed that F&M filed a voluntary petition under chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Massachusetts on August 23, 2005.

2

his business partner executed personal guaranties of F&M's obligations. F&M continued operating into the spring of 2005, at which point it ceased doing business. Following the cessation of F&M's business the Plaintiff obtained the Judgment against the Defendant, his business partner and F&M for breach of the consulting agreement signed in 1999 in connection with the sale of Plaintiff's business to F&M.

On July 1, 2005, the Defendant formed a New Hampshire corporation, AMC Mechanical, Inc. ("AMC"). AMC was authorized to issue one share of stock. The principal business of AMC, as stated in its articles of incorporation, is the "installation and service of air conditioning, heating, ventilation and refrigeration equipment." The business address of AMC is the same as the Defendant's home address. On August 14, 2005, the Defendant and his spouse filed an election for AMC to be taxed as a sub-chapter S corporation with the Internal Revenue Service (Exhibit 8) (the "Sub-S Election"). In that application, they represented that the Defendant owned forty-nine percent of the stock of AMC and that his spouse owned fifty-one percent of the stock of AMC, all as of May 2, 2005. At trial the Defendant's spouse testified that all of the stock of AMC was to be owned by her but that no stock certificates were ever actually issued.

### III. DISCUSSION

#### A. Section 523(a)(4)

11 U.S.C. § 523(a)(4) excepts from discharge obligations "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." The Plaintiff raises two claims under § 523(a)(4). First, the Plaintiff contends that the Defendant failed to account for money or property belonging to F&M, which was the collateral of the Plaintiff, while F&M was insolvent

3

or in the zone of insolvency. Second, the Plaintiff contends that the Defendant committed defalcation while acting in a fiduciary capacity. For the reasons discussed below, the Plaintiff has failed to establish a right to have the obligations of the Defendant declared not dischargeable under § 523(a)(4).

F&M was a Massachusetts limited liability company and as such it, like a corporation, is treated as a separate legal entity whose liabilities are not attributable to its owners and managing members.[3] Mass. Gen. Laws ch. 156 § 22 (2007). However, it is not clear from the state of the law that the manager or members of a limited liability company have the same duty to creditors as the officers and directors of a corporation. Neither party has cited any cases holding that managers or members of an insolvent limited liability company have a fiduciary duty to creditors of the company. This lack of authority is likely due to the fact that limited liability companies are a relatively new form of legal entity. Nonetheless, despite this lack of authority, and because Massachusetts law provides the owners and the managing members of an LLC with the same kind of limited liability as owners and officers of corporations, this Court shall assume that Massachusetts would impose a similar fiduciary duty on the members and managers of an insolvent limited liability company. However, even if such managers or members have a similar fiduciary duty, the Plaintiff's claim is without merit because individual creditors do not have standing to bring individual claims for breach of fiduciary duty against officers and directors of an insolvent corporation. Official Committee of Unsecured Creditors v. Foss (In re Felt Mfg.

---

[3] The Plaintiff has not alleged that the Defendant is liable to him on a "veil piercing" theory. Massachusetts permits the piercing of the corporate veil only in "rare particular situations to prevent gross inequity." Evans v. Multicon Constr. Corp., 574 N.E.2d 395, 398 (Mass. App. Ct. 1991). While it is likely that Massachusetts would apply the same rationale to limited liability companies, the Court is unaware of any Massachusetts case which actually pierces the veil. See Smith v. Shining Rock Golf Cmty., LLC, No. 20061510B, 2007 WL 2110958, at *2 (Mass. Super. Ct. June 20, 2007).

Co., Inc.), Bk. No. 05-13724-JMD, Adv. No. 06-1171-JMD, 2007 WL 2177690, at *8 (Bankr. D.N.H. July 26, 2007) (citing North Am. Catholic Educ. Programming Found., Inc. v. Gheewalla, No. 521, 2006, 2007 WL 1453705, at *7 (Del. May 18, 2007) (under Delaware law creditors do not have a direct claim against directors of a corporation that is either insolvent or in the zone of insolvency).  Accordingly, the Plaintiff has no standing to bring an individual claim against the Defendant for breach of fiduciary duty while F&M was insolvent.

For purposes of the Plaintiff's second claim under § 523(a)(4), the Court shall assume, without deciding, that the evidence at trial establishes that the Defendant failed to account for money or property belonging to F&M.  The obligations of the Defendant to the Plaintiff arose under the terms of his personal guaranty of the obligations of F&M, and are now liquidated and established in the Judgment.  The obligation was contractual.  The entry of the Judgment does not change the nature of the Defendant's obligation to the Plaintiff for dischargeability purposes. Archer v. Warner, 538 U.S. 314, 320-21 (2003).  Under the guaranty contract the Defendant may have owed obligations to the Plaintiff beyond payment of F&M's obligations, but the Plaintiff has presented no evidence or argument that the contract imposed any fiduciary duty on the Defendant.  If the Defendant was not a fiduciary, no objection to the dischargeability of a debt under § 523(a)(4) may be sustained.  Office of Public Guardian v. Messineo (In re Messineo), 192 B.R. 597, 599 (Bankr. D.N.H. 1996).

**B.  Section 523(a)(6)**

The Plaintiff alleges that the Defendant willfully and maliciously injured the property interest of the Plaintiff in the collateral securing F&M's obligations to him.  The injury allegedly occurred through the failure of the Defendant to notify him of F&M's cessation of business, the

use of the proceeds of accounts to pay unsecured creditors and the transfer of the inventory, tools and goodwill of F&M to the Defendant and AMC without consideration and notice to him.  The Defendant argues that the Plaintiff's claim under § 523(a)(6) should be denied because the Plaintiff never proved the existence of a perfected security interest.  Although the sale of the business to F&M and the execution of the security agreement between F&M and the Plaintiff occurred on or about November 9, 1999, the only evidence of the perfection of the security interest granted therein is a financing statement filed on March 4, 2005.  While the apparent delay in perfection of the security interest might be an issue between the Plaintiff and the chapter 7 trustee of F&M under certain circumstances, the acts of the Defendant which form the basis for the Plaintiff's claim under § 523(a)(6) took place prior to the commencement of bankruptcy proceedings by F&M.  As between F&M and the Plaintiff, the security agreement was enforceable in accordance with its terms without perfection by recording.  Mass. Gen. Laws ch. 106, § 9-203(b) (2007).  Accordingly, perfection, or the lack thereof, is not a material issue before the Court.

A debt may be excepted from discharge under § 523(a)(6) only where the debt arises from "a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury."  Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998) (emphasis in the original); Popa v. Roumeliotis, 140 F.3d 317, 318 (1st Cir. 1998).  Although the Supreme Court's Geiger decision appears to limit exceptions to discharge under § 523(a)(6) to intentional torts, a debt arising from a breach of contract may also prevent the discharge of that obligation under § 523(a)(6).  Williams v. I.B.E.W. Local 520 (In re Williams), 337 F.3d 504, 510 (5th Cir. 2003).  Accordingly, "a knowing breach of a clear contractual obligation that is certain to cause injury

may prevent discharge under [§] 523(a)(6), regardless of the existence of separate tortious conduct." Id.  Injuries resulting from a knowing breach of contract may be nondischargeable under § 523(a)(6) only where the creditor has presented explicit evidence that a debtor's breach was intended or substantially certain to cause injury to the creditor. Id. at 511.  "Exceptions to discharge are narrowly construed in furtherance of the Bankruptcy Code's 'fresh start' policy . . . ."  Rutanen v. Baylis (In re Baylis), 313 F.3d 9, 17 (1st Cir. 2002) (quoting Century 21 Balfour Real Estate v. Menna (In re Menna), 16 F.3d 7, 9 (1st Cir. 1991)).

      The testimony at trial established that the Defendant did not understand the effect of the security agreement executed in favor of the Plaintiff by F&M when it purchased the business in 1999 or the legal significance of specific provisions of the security agreement.  The evidence at trial established that F&M used the proceeds from its accounts to pay its unsecured creditors, rather than the Plaintiff on his secured claim.  Accordingly, at the time F&M filed its bankruptcy petition it had no unsecured creditors and its only creditor was the Plaintiff on account of his secured claim.  The Plaintiff argues that the conduct by F&M was intended to harm him and preserve relationships with vendors that the Defendant needed when he started AMC.  However, the Plaintiff did not establish by a preponderance of the evidence (1) that the Defendant was responsible for the decision on which of F&M's creditors to pay, (2) how much was in fact paid, (3) the value of the proceeds paid from F&M's accounts or (4) that paying some, but not all of F&M's creditors was done with the intent to harm the Plaintiff.  The evidence at trial established that the Defendant had personally guaranteed F&M's obligations to the Plaintiff.  Yet no evidence was presented on whether the Defendant had personally guaranteed F&M's obligations to other creditors.  In the absence of such evidence, it appears possible that the Defendant paid

unsecured trade creditors of F&M ahead of the Plaintiff not with intent to harm the Plaintiff, but because he viewed the payment of those obligations as being more necessary.  Payment of F&M's obligations not subject to a personal guaranty is not necessarily consistent with an inference that the Defendant was singling the Plaintiff out for harm.  The Court finds that the Plaintiff has not established by a preponderance of the evidence, let alone explicit evidence of intent to harm, that the Defendant's actions in authorizing or acquiescing in the payment of unsecured trade creditors rather than the Plaintiff were deliberately intended to harm the Plaintiff's security interest in F&M's collateral.

The evidence of a deliberate intent to harm the Plaintiff by the transfer of inventory and good will to AMC is equally lacking.  In addition, as discussed in subsection III.C.2 below, the Plaintiff failed to establish that such assets had any value, a prerequisite to a finding of harm to the Plaintiff, or that the good will was property of F&M which was not treated as confidential and proprietary information and was not subject to a non-competition agreement in connection with the employment of the Defendant by F&M.

For the reasons discussed above, the Court finds that the Plaintiff has failed to establish that the Defendant's obligations to him are nondischargeable under § 523(a)(6).

### C.  Section 727

The Plaintiff's complaint does not specifically identify under which subsections of § 727 he seeks to deny the Defendant his bankruptcy discharge.  However, in his opening statement, and in response to questions from the Court, Plaintiff's counsel clarified that the Plaintiff was proceeding under § 727(a)(4)(A), making a false oath or account, and § 727(a)(7), committing certain acts proscribed by § 727, on or after August 30, 2004, in connection with the F&M

8

bankruptcy proceeding. Specifically, the Plaintiff alleges that the Defendant violated §§ 727(a)(2), (a)(3) and (a)(4)(A) in connection with the F&M bankruptcy proceeding.

As the party requesting denial of the Defendant's discharge, the Plaintiff has the burden of establishing the elements of §§ 727(a)(4)(a) and (a)(7). See Watman v. Groman (In re Watman), 458 F.3d 26, 32 (1st Cir. 2006). The Court must construe the grounds for discharge liberally in favor of debtors and against those seeking to deny debtors their discharge. Harman v. Brown (In re Brown), 56 B.R. 63, 66 (Bankr. D.N.H. 1985); see also Watman, 458 F.3d at 34 (citing Boroff v. Tully (In re Tully), 818 F.2d 106, 110 (1st Cir. 1987)). However, "the very purpose of certain sections of the law, like 11 U.S.C. § [727(a)], is to make certain that those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of their affairs." Tully, 818 F.3d at 110 (cited in Razzaboni v. Schifano (In re Schifano), 378 F.3d 60, 66 (1st Cir. 2004); Palmacci v. Umpierrez, 121 F.3d 781, 786 (1st Cir. 1997)).

  **1. Section 727(a)(4)(A)**

The Plaintiff alleges that the Defendant made two false oaths. First, the Defendant indicated in his schedule B that he was a one percent owner of AMC even though the articles of incorporation of AMC reflect that it was authorized to issue only one share of common stock. Second, the Plaintiff also argues that the Sub-S Election was signed by the Defendant under penalties of perjury and indicates that he owns forty-nine percent of AMC. The testimony at trial established that the Defendant's spouse handled all of the finances for both F&M and AMC, as well as the Defendant's household. She testified that she and her husband had discussed the ownership of AMC when it was formed, and had agreed that she should own it because of his

likely need to file personal bankruptcy. She testified that she thought that she owned the company but discovered that the single share of authorized common stock of AMC had never been actually issued. The Defendant testified that he thought that he owned one percent when he completed his schedules. The Defendant also testified that the Sub-S Election was blank when he signed it.

Turning first to the Sub-S Election, it is not material to the Court's determination of the Plaintiff's § 727(a)(4)(A) claim because at best it is a statement not made in connection with any documents filed in connection with any bankruptcy proceeding and, based upon the evidence submitted at trial, does not and cannot reflect the actual ownership AMC. Moving next to the Defendant's schedule B, it likewise does not reflect the actual ownership of AMC because AMC is only authorized to issue one share of common stock. However, to establish a right to relief under § 727(a)(4)(A), the Plaintiff must establish by a preponderance of the evidence that the Defendant made a false oath "knowingly and fraudulently." Desmond v. Varrasso (In re Varrasso), 37 F.3d 760, 764 (1st Cir. 1994). The testimony in this case establishes that the Defendant was not active in the financial management of either F&M or AMC. The evidence establishes that he signed two documents under penalty of perjury, the verification of his bankruptcy schedules and the Sub-S Election, which were in fact inaccurate, but no evidence of any intent to deceive was presented. Therefore, the question is whether the evidence supports a finding that the Defendant prepared and filed his bankruptcy schedules with a reckless disregard for the truth.

As stated earlier, the purpose of § 727(a)(4)(A) "is to make certain that those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or the reality of

their affairs." Tully, 818 F.2d at 110.  In this case, the Defendant listed an interest in a business that he did not have and the Plaintiff claims that the Defendant was the de facto owner of AMC.  The erroneous listing of an equity ownership in AMC would tend to make an inquiry by the chapter 7 trustee more, rather than less, likely.[4]  In addition, in his answer to question 18 in the statement of financial affairs, the Defendant lists his association with AMC.  Similarly, that answer by the Defendant would also make an inquiry by the chapter 7 trustee more, rather than less, likely.  However, no evidence of any inquiry by the chapter 7 trustee, beyond questions at the first meeting of creditors, was presented at trial.  This leads the Court to believe that those persons charged with ensuring that the Defendant is honest and up front with the Court did not believe that he was acting with a reckless disregard for the truth.

Based upon the testimony at trial, the lack of evidence of any investigation by the chapter 7 trustee and the Defendant's schedules and statement of financial affairs, the Court finds that the Plaintiff has failed to establish by a preponderance of the evidence that the Defendant "knowingly and fraudulently" made a false oath in his bankruptcy filing.

### 2.  Section 727(a)(7)

The Plaintiff alleges that the Defendant's conduct, within one year prior to the filing of his bankruptcy petition, in connection with F&M's bankruptcy case, violated several provisions of § 727(a).  The one year period is measured from the petition date in this proceeding, August 30, 2005.  Accordingly, the actions of the Defendant must have occurred after August 30, 2004.  The actions raised by the Plaintiff as violating § 727(a) all occurred in the first six months of

---

[4] The chapter 7 trustee is charged with investigating the financial affairs of the debtor and, if advisable, opposing the debtor's discharge.  11 U.S.C. § 704(a).

2005 and are within the one year period.  To the extent that the actions raised by the Plaintiff all involve the transfer of property to the Defendant or AMC they satisfy the requirement of involving an insider.  The evidence established that the Defendant was an officer of AMC, the sole service employee and was the person in control of the corporation.  See 11 U.S.C. § 101(31)(B)(ii) and (iii).  The Defendant was admittedly an owner and manager of F&M, and, therefore, was an insider with respect to F&M.  Id.  Accordingly, the Court must examine the evidence submitted at trial to determine if the Plaintiff met his burden of proof with respect to his claims of violations of §§ 727(a)(2), (a)(3) and (a)(4)(A).

### a. Violation of § 727(a)(2) in Connection with F&M

Section 727(a)(2) provides that:

> The court shall grant the debtor a discharge unless . . . the debtor, with intent to hinder delay or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed (A) property of the debtor within one year before the filing of the petition; or (B) property of the estate, after the date of the filing of the petition.

11 U.S.C. § 727(a)(2).  The Plaintiff must establish each element by a preponderance of the evidence.  Groman v. Watman (In re Watman), 301 F.3d 3, 7 (1st Cir. 2002).  "Section 727 requires a showing of actual intent, not constructive intent."  Id. at 8.  Since direct proof of actual intent is generally difficult, absent an admission from a defendant, the courts look to the circumstances surrounding a transfer that are indicative of fraudulent intent.  Those circumstances include:

> (1) insider relationships between the parties; (2) the retention of possession, benefit or use of the property in question; (3) the lack or inadequacy of consideration for the transfer; (4) the financial condition of the party sought to be charged both before and after

> the transaction at issue; (5) the existence or cumulative effect of
> the pattern or series of transactions or course of conduct after the
> incurring of debt, onset of financial difficulties, or pendency or
> threat of suits by creditors; (6) the general chronology of events
> and transactions under inquiry; . . . and (7) an attempt by debtor to
> keep the transfer a secret.

Id. (citations omitted).  For purposes of § 727(a)(2) the definition of transfer is construed as broadly as possible and is defined as "every mode, direct and indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property."  Id. at 10; 11 U.S.C. § 101(54)(D).  The term "property" is not defined in the Bankruptcy Code, but is construed in a bankruptcy context as including anything of value which but for a transfer might have been preserved for the chapter 7 trustee to the ultimate benefit of F&M's creditors.  Groman, 301 F.3d at 11, n.8 (citing Robinson v. Watts Detective Agency, 685 F.2d 729, 734 (1st Cir. 1982)).

The evidence at trial established that the Defendant caused AMC to purchase a Ford F-150 pickup truck from F&M for the amount necessary to pay off a purchase money loan on the vehicle of approximately $14,500.00.  No evidence was presented that the vehicle was worth more than the amount paid by AMC or that the proceeds from the sale of the vehicle were not properly paid to the entity which financed the vehicle for F&M.

The evidence at trial established that at the time of the transfer the truck contained some miscellaneous parts belonging to F&M such as nuts, bolts, tubing and the like.  Although the evidence tended to prove that the parts on the truck could be used, and were useful, to the Defendant and AMC in the conduct of their business, no evidence was presented that even suggested, let alone proved, that such parts had any value to the chapter 7 trustee of F&M.  The Plaintiff entered into evidence a transcript of the first meeting of creditors for F&M (Exhibit 42).

The transcript reflects that the chapter 7 trustee inquired into the transfer of the truck to AMC (pages 22-24) and either asked about inventory in vehicles when F&M purchased the business from the Plaintiff (page 7) or listened to counsel for the Plaintiff ask about that inventory and inventory in the truck at the time it was transferred to F&M (pages 30-31).  None of the testimony at trial nor at the first meeting of creditors for F&M established that the parts in the truck had any value to the chapter 7 trustee or the bankruptcy estate of F&M.

  The evidence at trial established that after F&M ceased doing business the Defendant retained certain tools which he had used while employed by F&M.  The Defendant testified that the tools included a saws-all, drill, test equipment and hand tools and that the tools were his tools, not property of F&M.  The Plaintiff submitted some evidence that tools were included as part of the original sale of the business by the Plaintiff to F&M in 1999.  However, he failed to present any evidence that any of those tools were among the items which the Defendant claims were his personal tools.  In fact, the Defendant testified at trial that the tools originally purchased from the Plaintiff were taken care of or used by his former partner at F&M.  The transcript of the first meeting of creditors for F&M (Exhibit 42) reflects a number of questions posed by the Plaintiff's counsel to the Defendant and his former partner in the presence of the chapter 7 trustee (pages 30-32).  The testimony at the first meeting of F&M's creditors failed to establish that any of the tools sold by the Plaintiff to F&M were in the pickup truck purchased by AMC.  None of the testimony or other evidence presented at trial support a finding that the Defendant either retained himself or transferred to AMC without consideration any tools belonging to F&M.

The evidence at trial established that the Defendant, through AMC, serviced many, if not most, of the customers of F&M after it ceased doing business.  The Plaintiff contends that the customer list of F&M was property with value which was transferred to AMC by the Defendant for no consideration.  No evidence was presented that the customer list of F&M was treated as confidential and proprietary information by F&M or that the Defendant had entered into any employment contract or any non-competition agreement with F&M which would have prohibited him from soliciting such customers if his employment by F&M was terminated.  The Plaintiff entered into evidence two letters from the Defendant notifying former customers of F&M that it had ceased doing business and that the Defendant was continuing in business under AMC (Exhibits 32 and 33).  However, the Defendant testified that those letters were sent to the two customers in question because they had asked for a letter with the new company's name.  At the first meeting of creditors, the chapter 7 trustee for F&M asked about any service contracts that F&M had with customers shortly before it ceased operations.  The testimony at that meeting was that F&M did not have any service contracts, in the sense of fixed payments to be on call.  Rather all relationships with customers were to provide services on an as needed basis.  In addition, the Defendant testified at trial that business with customers of F&M was built on personal relationships between the customer and the Defendant himself for the customers he served.  Even the Plaintiff testified that the personal relationship with the owner of the business or the service person was the most important factor in ongoing contracts and business.  Based upon the testimony at trial, the other evidence submitted at trial, the absence of any evidence of action by the chapter 7 trustee for F&M and the absence of any non-competition agreement between the Defendant and F&M, the Court finds that the Plaintiff has failed to establish that

any contracts of value to F&M were transferred without consideration to AMC or that any customer list of F&M had any value to the chapter 7 trustee or the bankruptcy estate of F&M.

### b. Violation of § 727(a)(3) in Connection with F&M

Section 727(a)(3) denies a discharge to a debtor who, without justification, conceals, destroys, mutilates, falsifies or fails to keep or preserve books and records from which the debtor's financial condition or business transactions may be ascertained.  The Court has carefully reviewed the record of the trial and has been unable to find any evidence which establishes that the records of F&M were insufficient to determine its financial condition or business transactions for the period from September 1, 2004 through the filing of its bankruptcy petition on August 23, 2005.

### c. Violation of § 727(a)(4)(A) in Connection with F&M

Section 727(a)(4)(A) denies a discharge to a debtor who knowingly and fraudulently makes a false oath or account in connection with a bankruptcy case.  The Court has carefully reviewed the record of the trial and has been unable to find any evidence which establishes that the Defendant made a false oath or account in connection with the F&M bankruptcy case.

### 3. Conclusion on § 727 Claims

For the reasons discussed above, the Court finds that the Plaintiff has failed to establish by a preponderance of the evidence grounds to deny the Defendant a discharge under § 727 of the Bankruptcy Code.

## IV.  CONCLUSION

For the reasons set forth in this opinion, the Court shall enter judgment for the Defendant on the Plaintiff's complaint.  This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

ENTERED at Manchester, New Hampshire.


Date:   August 17, 2007                             /s/ J. Michael Deasy
                                                                       J. Michael Deasy
                                                                       Bankruptcy Judge